## CIRCUIT COURT OF THE CITY OF STAUNTON

Walter H. Horner

v.

Virginia Department
of Mental Health,
Mental Retardation,
and Substance Abuse Services,
Western State Hospital

July 11, 2002

BY JUDGE HUMES J. FRANKLIN, JR.

The Court hereinafter sets forth its opinion with respect to the appeal of Walter H. Horner from the decisions of the Virginia Department of Employment Dispute Resolution (EDR) hearing officer in grievances designated "No. 5248" and "No. 5249."

Appellant Horner was employed as a physician at Western State Hospital by the Virginia Department of Mental Health, Mental Retardation and Substance Abuse Services. During his employment, Horner received three "Group II" disciplinary notices and was dismissed from his job. Dismissal is warranted on the accumulation of two such notices.

Horner contested the notices under Virginia's statutory grievance procedure. See § 2.1-116 et seq. of the Code of Virginia (2000) (currently § 2.2-3000 et seq. Va. Code). The grievance statute provides for up to three levels of management review. § 2.1-116.05(B), Va. Code (2000). At the first level of management review, Horner's immediate supervisor, the so-called "First-step Respondent," stated, in separate decisions, that he supported reversal of both notices at issue in this appeal and he concluded that Horner should be reinstated with back pay and benefits. However, the second-level and third-level management respondents disagreed with, and overturned, the decisions of the first-level respondent.

The matters went before an EDR hearing officer. One notice was dismissed and, on August 20, 2001, in separate decisions, the hearing officer affirmed the notice at issue in "Grievance No. 5248" (failure to follow a supervisor's instructions) and the notice at issue in "Grievance No. 5249" (failure to comply with written policy).

Horner then sought, and obtained, reconsideration by the hearing officer, but both decisions were reaffirmed. Next, Horner sought review of the reconsidered decisions by EDR and by the Department of Human Resource Management (DHRM). Ultimately, both EDR and DHRM upheld the hearing officer's decisions and Horner appealed to this Court.

*Appellant's Bases for Appeal*

Horner asserts four bases in his appeal. First, according to Horner, the Virginia statutory grievance procedure requires the remedy provided by Appellant's first-level respondent be given effect. Second, the government failed to abide by the statutory requirement that "all time limitations prescribed in the grievance procedure . . . shall be reasonable, specific, and equally applicable to the agency and the employee" as specified by § 2.1-116.05(G), Va. Code (2000), and, moreover, failed to respond to grievant within the time frame specified under the agency adopted Grievance Procedure Manual. Third, the hearing officer, in Grievance No. 5249, mischaracterized an e-mail message sent by Appellant. Fourth, the decision of the hearing officer, in Grievance No. 5248, was "plainly wrong and without evidence to support it." Appellant's "Memorandum in Support of Appeal," page 7.

*Prior Action of this Court*

In March 2002, the Court overruled Horner's motion to obtain a typed transcript of the record of proceedings before the hearing officer.

In May 2002, the Court overruled the Attorney General's motion to dismiss, which maintained that Horner had failed to comply with statutory deadlines for prosecuting the matter and that deciding the case on briefs was improper. The Court found that a consent order signed by both parties established that the matter would be resolved through briefs, rather than by a hearing. While the Attorney General has preserved his objection to the Court's ruling on the motion to dismiss, it should be noted that, in addition to the consent order, the Attorney General sent a letter to this Court on February 8, 2002, stating, in part, "Please advise if the Court prefers briefing or oral argument."

*Circuit Court Review on Appeal*

Following a hearing officer's final decision in a grievance, "a party may appeal [to Circuit Court] on the grounds that the determination is contradictory to law. . . ." § 2.1-116.07:1(B), Va. Code (2000). "The [Circuit] court may affirm the decision or may reverse or modify the decision." *Id.*

*Horner's First Contention: "Remedy," not "Recommendation"*

The Virginia General Assembly has established a statutory framework for a state employee grievance procedure. See § 2.1-116.05 et seq., Va. Code (2000). Under the statute, the Virginia Department of Employment Dispute Resolution (EDR) is required to develop a grievance procedure that "includes not more than three successively higher grievance resolution steps and a formal hearing. . . ." § 2.1-116.05(B), Va. Code (2000). The statute also specifies that, on receipt of a formal grievance complaint, management shall review and respond to the merits of the case and that "each level of management review shall have the authority to provide the employee with a remedy." § 2.1-116.05(E), Va. Code (2000).

In administratively implementing the statutory grievance procedure, EDR adopted a "Grievance Procedure Manual" (GPM).[1] In the GPM, consistent with § 2.1-116.05(B), Va. Code (2000), EDR provided for three levels of management review for the purpose of resolving an employee's grievance short of elevating the matter to a formal hearing. GPM, § 2.1 and §§ 3.1 to 3.3. In the GPM scheme, the first of three potential "Management Resolution Steps" is conducted by the "First-step Respondent." GPM, § 3.1. The "First-step Respondent" is an employee's immediate supervisor. GPM, § 9. Appellant Horner went through the first resolution step for both matters that later formed the bases for Grievance Nos. 5248 and 5249. As noted above, Horner's supervisor, Michael T. Clayton, M.D., was the "First-step Respondent." On June 11, 2001, Dr. Clayton issued separate written decisions regarding the disciplinary notices. In both decisions, Dr. Clayton reviewed the cases and formally concluded both documents in the same manner, stating: "I support the complete reversal of Disciplinary Action, [Horner's] reinstatement with back pay, and restoration of all his fringe benefits. I also believe he merits an apology." See Exhibits 32 and 33, Appellant's "Memorandum in Support of Appeal" (containing copies of Dr. Clayton's decisions).

---

[1] EDR "Grievance Procedure Manual" (version 07/01/2001) online at http://www.edr.state.va.us/gpmtoc.htm (viewed May 14, 2002, and July 1, 2002).

However, in the subsequent two levels of management review, management disagreed with Dr. Clayton's decisions in both matters. The matters then went before an EDR hearing officer as Grievance Nos. 5248 and 5249 and, following formal hearings, the hearing officer sided with the determination made by management in the second and third resolution steps to uphold the disciplinary notices. See Decision of (EDR) *Hearing Officer In re Grievance No. 5248*, August 20, 2001; Decision of (EDR) *Hearing Officer In re Grievance No. 5249*, August 20, 2001.

In both decisions, the hearing officer stated: "[A] prior ruling by the Director of the Department of Employment Dispute Resolution (EDR) has established that upper level management has the discretion to review the immediate supervisor's decision and to make a determination to award the requested relief or uphold the disciplinary action." Decision of (EDR) Hearing Officer In re Grievance No. 5248, p. 7, and Decision of (EDR) Hearing Officer In re Grievance No. 5249, p. 5 (with both decisions of the hearing officer citing "Compliance Ruling of Director, In re DMHMRSAS, March 23, 2001 (Ruling # 2001QQ).").

The Court notes that in the ruling relied on by the hearing officer, Compliance Ruling of [EDR] Director, In re DMHMRSAS, March 23, 2001, Ruling # 2001QQ, the Director characterized the decision of the immediate supervisor, the First-step Respondent in the underlying case, as a "recommendation" that was not accepted by upper level management and the Director also, without citing any authority, asserted that "the grievance statutes do not provide management step respondents any more authority to grant a 'remedy' than those respondents would otherwise possess within the management hierarchy."

Horner contends that the statutory grievance procedure, specifically § 2.1-116.05(E), Va. Code (2000), requires that the state must give effect to Dr. Clayton's decisions. This is so, Horner maintains, because the statute provides that, at each of the three potential management resolution steps, the management respondent, including the first level respondent, has "the authority to provide the employee with a remedy." § 2.1-116.05(E), Va. Code (2000). However, Horner argues that the government's action, here, demonstrates that the government views the first-level respondent's decision as a "recommendation" that may be accepted or ignored by higher-level management, rather than, as the statutes states, a "remedy." See § 2.1-116.05(E), Va. Code (2000).

The Attorney General, in this appeal, shares the view of the hearing officer in maintaining that higher-level management may, on its own initiative, overrule a "First-level Respondent." Appellee's "Memorandum in Opposition to Appellant's Memorandum in Support of Appeal," page 4.

This Court's decision is guided by well-settled principles. "Under basic rules of statutory construction," a court must examine the language of the Code section at issue "in its entirety and determine the intent of the General Assembly from the words contained in the statute, unless a literal construction of the statute would yield an absurd result. When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language. Thus, when the General Assembly has used words of a plain and definite import, courts cannot place on them a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." *Vaughn, Inc. v. Beck*, 262 Va. 673, 677, 554 S.E.2d 88 (2001) (citations omitted).

In the instant case, the General Assembly explicitly employed the term "remedy" in the statute providing for a state employee grievance procedure. See § 2.1-116.05(E), Va. Code (2000). "Remedy" is specific legal term[2] of definite import, and for this Court to construe "remedy" to mean merely "recommendation" would be to violate the prohibition of *Vaughn* against construing a statute so as to "hold[] that the General Assembly meant something other than that which it actually expressed." *Vaughn*, 262 Va. at 677.

The Court is not unmindful of the Attorney General's argument that allowing an immediate supervisor to make a final, conclusive, determination would mean that "a lower-level employee would have more authority on disciplinary matters than an agency director," and that such a stance "is legally and logically untenable," as well as "unworkable in practice and would literally turn an agency chain of command upside-down." Appellee's "Memorandum in Opposition to Appellant's Memorandum in Support of Appeal," page 5.

---

[2] "[A] remedy is that part of the judicial process which permits actualization of substantive private law rights when the rules of practice are properly invoked." John L. Costello, *Virginia Remedies*, § 1-1(a) (2d ed. 2001). "Traditionally, one thinks of a remedy as a procedural device at law or equity for administering justice to a person injured by the disfavored act of another. . . . Remedies come into being as vested individual rights only upon the occurrence of a defined wrong and entitle the injured person to a final readjustment of the distribution of assets or of patterns of conduct." *Id.*, § 1-1.

However, the Court notes that nothing in the statute requires EDR to develop and adopt an employee grievance procedure that endows an immediate supervisor with such authority. The statute simply provides for up to three levels of management review, each with the authority to provide a remedy, but the statute does not specify that an immediate supervisor be involved in any of the formal grievance procedure levels.

Yet EDR, of its own accord, adopted a grievance procedure that designated the position of immediate supervisor as the management respondent in the first of three potential resolution steps. See GPM, § 9. Having placed an immediate supervisor in the position of "First-step Respondent," a position that, by statute, has the authority to provide a grievant with a remedy, EDR cannot now be heard to complain that it is illogical to give an immediate supervisor such authority.

The Court also notes that, following a "First-step Respondent's" determination, GPM § 3.1 expressly provides an avenue for a grievant to continue to the next step in the management resolution process. Similarly, following a second step determination, a grievant may choose to continue to the third step under GPM § 3.2. However, neither section of the GPM provides management such an avenue to contest the outcome a decision.

The Court, then, finds that the decisions of the hearing officer in both Grievance Nos. 5248 and 5249 were contradictory to law. See § 2.1-116.07:1(B), Va. Code (2000). As such, the Court may reverse or modify the decisions. *Id*. The Court reverses the hearing officer's decisions in both grievances and reinstates the remedies of the "First-step Respondent," Dr. Clayton, to wit complete reversal of the disciplinary actions which formed the bases for Grievance Nos. 5248 and 5249, reinstatement of Dr. Horner with, from the date of his termination, back pay, and restoration of all his fringe benefits.

Having so determined, the Court refrains from addressing Horner's three other asserted bases for challenging the decisions of the hearing officer in Grievance Nos. 5348 and 5249.